729 S.E.2d 876

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Brent Levi McGILTON, Defendant Below, Petitioner.**

No. 11–0410.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2012.

Decided June 19, 2012.

Robert C. Catlett, Esq., Deputy Public Defender, Office of the Public Defender, Charleston, WV, for Petitioner.

Scott R. Smith, Esq., Ohio County Prosecuting Attorney, Stephen L. Vogrin, Esq., Assistant Prosecuting Attorney, Wheeling, WV, for Respondent.

WORKMAN, Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Ohio County entered on January 12, 2011. In that order, the petitioner, Brent Levi Victor McGilton, was convicted by a jury of three counts of malicious assault against his wife, Angela McGilton (hereinafter, "the victim"). In this appeal, the petitioner argues that the circuit court violated his double jeopardy protections by sentencing him for three counts of malicious assault for three wounds caused during the same course of conduct. The petitioner was sentenced to two to ten years on the first count of malicious assault, two to ten years on the second count of malicious assault, and four to ten years on the third count of malicious assault. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court did not commit reversible error and, accordingly, affirms the decision below.

## I.

## FACTS

On November 22, 2009, the petitioner stabbed his wife numerous times during an argument in their home. She was stabbed twice in the neck, multiple times in the back of her head, once in the ankle, and once in the back of her leg. The victim said that while the petitioner was stabbing her, he stated that he was "going to fu*king kill [her]." The victim managed to escape, get to the bathroom, and call 911.

Officer Kenneth Parker of the Wheeling Police Department was just a few blocks

away when he received the call from dispatch notifying him of the stabbing. He stated that he arrived at the scene of the crime in less than one minute. Officer Parker testified that the petitioner was arrested after a failed attempt to escape. The victim was then taken to the hospital for treatment of her injuries. Thereafter, she returned to her home and went to sleep. When she awakened, the petitioner had been released from police custody and was standing at the foot of her bed. He once again threatened to kill her stating that "he didn't want to go back to jail [and] if he was to go to jail, ... he would do it right next time and he would go to Iowa." [1]

In January of 2010, the petitioner was indicted on three counts of malicious assault and one count of assault during commission of a felony. On June 22, 2010, the petitioner's trial began. During pre-trial motions, counsel for the petitioner moved for dismissal of the charge of assault during commission of a felony based upon double jeopardy grounds; he did not raise any double jeopardy arguments regarding the three separate counts of malicious assault. The circuit court dismissed the assault during commission of a felony count and the case proceeded on the three charges of malicious assault. On June 23, 2010, the petitioner was found guilty of all three counts of malicious assault.

On August 2, 2010, prior to his sentencing hearing, a recidivist trial was held wherein a jury found the petitioner to be the same person convicted of the felony of wanton endangerment on April 21, 2005. In consideration of his prior conviction, one of the malicious assault sentences was later enhanced by doubling the minimum sentence.[2] On January 12, 2011, the petitioner was sentenced to two to ten years on the first count of malicious assault, two to ten years on the second count of malicious assault, and four to ten years on the third count of malicious assault. This appeal followed.

## II.

### STANDARD OF REVIEW

■ The petitioner argues that the circuit court violated his double jeopardy protections by sentencing him for three counts of malicious assault for three wounds caused during the same course of conduct. This Court has explained that "[A] double jeopardy claim [is] reviewed *de novo.*" Syllabus Point 1, in part, *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996). With this standard in mind, this Court will consider the petitioner's argument.

## III.

### DISCUSSION

At the outset, this Court must first consider whether the petitioner's double jeopardy argument has been properly preserved below. The petitioner argues that regardless of whether the issue was properly raised below, double jeopardy issues arising from an illegal sentence can be raised at any time pursuant to W.Va. R. Crim.P. Rule 35(a), which provides that: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence." He then

---

1. The victim testified that the petitioner and the petitioner's mother soon thereafter developed a plan wherein the victim would recant her story and, instead, explain that she had stabbed herself. She said that she initially agreed to go along with the plan because she was "scared that he was going to make true of the fact that he would kill me."

2. Pursuant to W.Va.Code § 61–11–18(a), the petitioner's third sentence for malicious assault was enhanced to a term of four to ten years due to his previous April 21, 2005, conviction of the felony of wanton endangerment involving a firearm. W.Va.Code § 61–11–18(a), provides:

Except as provided by subsection (b) of this section, when any person is convicted of an offense and is subject to confinement in the state correctional facility therefor, and it is determined, as provided in section nineteen of this article, that such person had been before convicted in the United States of a crime punishable by confinement in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, the minimum term shall be twice the term of years otherwise provided for under such sentence.

contends that irrespective of Rule 35(a), the circuit court's error qualifies as "plain error." This Court has said that plain error is defined as "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The petitioner argues that the error in this case is plain, affected his substantial rights, and seriously affected the fairness, integrity, and public reputation of the judicial proceedings.

■ Conversely, the State contends that the petitioner waived this argument because he raises it for the first time on appeal. The State maintains that the United States Supreme Court has recognized that defendants may waive several fundamental constitutional rights, including double jeopardy, by failing to preserve the issue for appeal.[3] Finally, the State argues that because there was no error below, the plain error doctrine is inapplicable and the petitioner's convictions for all three offenses should be affirmed.

■ In *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996), this Court explained as follows:

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights.... When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

This Court in *LaRock* further explained:

> There is also an equally salutary justification for the raise or waive rule: It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result). In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

*Id.* at 316, 470 S.E.2d at 635. The *LaRock* Court further explained that: "One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." *Id.* (internal quotations and citations omitted). *See also Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 703, 474 S.E.2d 872, 883 (1996) ("The law ministers to the vigilant, not those who slumber on their rights." (internal quotations and citations omitted)); *State v. Asbury*, 187 W.Va. 87, 91, 415 S.E.2d 891, 895 (1992) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

■ In *State v. Carroll*, 150 W.Va. 765, 769, 149 S.E.2d 309, 312 (1966), this Court stated that "the defense of double jeopardy may be waived and the failure to properly raise it in the trial court operates as a waiver." *See also Adkins v. Leverette*, 164 W.Va. 377, 381, 264 S.E.2d 154, 156 (1980) ("we subscribe to the proposition, that jeopardy, having attached, may be waived by the defendant and in a subsequent timely trial on the same offense said defendant cannot successfully claim that he is being subjected to double jeopardy" (citation omitted)).

■ Likewise, in *Peretz v. United States*, 501 U.S. 923, 936–937, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), the Supreme Court of the United States explained that: "The most basic rights of criminal defendants are similarly subject to waiver." The Supreme Court listed double jeopardy as a fundamental constitutional right which may be waived if not timely raised citing to *United States v. Bascaro*, 742 F.2d 1335, 1365 (C.A.11 1984), cert. denied *sub nom. Hobson v. United States*, 472 U.S. 1017, 105 S.Ct. 3476, 87

---

3. *See Peretz v. U.S.*, 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), *infra.*

L.Ed.2d 613 (1985).[4] In *United States v. Broce*, 488 U.S. 563, 574–75, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Supreme Court discussed the concept of waiving a double jeopardy claim in the context of a guilty plea. It recognized two exceptions to the general rule that a guilty plea results in waiver of a double jeopardy claim: (1) if there exists a realistic likelihood of prosecutorial vindictiveness in contravention of defendant's right to due process of law (citing *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)); or (2) if the charge, when judged on its face, is one which the State may not constitutionally prosecute (citing *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)). The exceptions noted in *Broce* have no application under the present circumstances. There is no claim of prosecutorial vindictiveness, and the charges of malicious assault were for separate and distinct violations of the statute.

In this case, it is clear that the petitioner's trial counsel was aware of the petitioner's constitutional protections against double jeopardy. To that end, the petitioner was originally indicted for three counts of malicious wounding under W.Va.Code § 61–2–9(a), and one count of assault during commission of, or attempt to commit, a felony under W.Va.Code § 61–2–10.[5] During the first day of trial, however, the circuit court granted the petitioner's motion to dismiss the single count of assault during commission of, or attempt to commit, a felony under W.Va. Code § 61–2–10 on double jeopardy grounds.[6] The record reveals, however, that the petitioner did not raise any double jeopardy arguments regarding the three separate indictments of malicious wounding at any stage below, including the preliminary hearing, prior to trial, during trial, at sentencing, or by post-trial motion. As the State correctly points out, the issue of double jeopardy was first raised in this appeal. In fact, the only argument during the sentencing hearing by the petitioner's counsel was that the petitioner be sentenced concurrently for all three convictions of malicious assault. In

---

4. Other examples cited by the Supreme Court in *Peretz* were:

> *United States v. Gagnon*, 470 U.S. 522, 528, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 1044, 4 L.Ed.2d 989 (1960) (failure to object to closing of courtroom is waiver of right to public trial); *Segurola v. United States*, 275 U.S. 106, 111, 48 S.Ct. 77, 79, 72 L.Ed. 186 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); *United States v. Figueroa*, 818 F.2d 1020, 1025 (C.A.1 1987) (failure to object results in forfeiture of claim of unlawful postarrest delay); ... *United States v. Coleman*, 707 F.2d 374, 376 (C.A.9) (failure to object constitutes waiver of Fifth Amendment claim), cert. denied, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983). *See generally Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right").

501 U.S. at 936–937, 111 S.Ct. 2661.

5. W.Va.Code § 61–2–10 provides:

> If any person in the commission of, or attempt to commit a felony, unlawfully shoot, stab, cut or wound another person, he shall be guilty of a felony and, upon conviction, shall,

in the discretion of the court, either be confined in the penitentiary not less than two nor more than ten years, or be confined in jail not exceeding one year and be fined not exceeding one thousand dollars.

6. Despite the circuit court's dismissal of this count, it should be noted that in *State v. Penwell*, 199 W.Va. 111, 116, 483 S.E.2d 240, 245 (1996), this Court found that a conviction for assault during the commission of a felony along with a separate conviction of aggravated robbery *did not* violate double jeopardy.

> Rather, we conclude that by enacting the offense of assault during the commission of a felony, the legislature clearly intended to impose punishment in addition to that specified for the underlying felony, if the criminal actor shot, cut, stabbed, or wounded another person during the attempt to commit or the commission of the underlying felony and to classify that additional conduct as felonious. In short, W.Va.Code § 61–2–10 acts as an enhancement statute where conduct otherwise defined as felonious is executed in such a manner that another person—a victim of the underlying felony or a witness or other bystander—is shot, cut, stabbed, or wounded in the process. In light of our conclusion that the legislative intent to create two separate offenses can be discerned from the language of the statutes under discussion here, we need not proceed to next step suggested in *Gill*, the application of the *Blockburger* test.

arguing for a lenient sentence, the petitioner's counsel stated:

> Your Honor. He's looking at a maximum of 8 to 30 years. He's been incarcerated now for approximately a year. We just respectfully request that—I don't believe [the petitioner] is a threat to anybody or to [the victim], should he be given an alternative sentence of probation so we just request that the sentences be run concurrent . . . and sentence him to 4 to 10 and make it suspended for a lengthy term of probation to include perhaps home confinement and some type of rehabilitation.

The petitioner's counsel further stated during the sentencing hearing: "I mean, he obviously was found guilty of the three counts of malicious wounding. He's aware of that." In consideration of all of the above, this Court is not persuaded by the petitioner's argument on this matter and finds that he waived this assignment of error.

Having found that the petitioner waived his argument on this issue, this Court will now consider whether the petitioner's separate convictions for malicious assault violated double jeopardy principles, and if so, whether such a violation resulted in plain error. Syllabus Point 7, *State v. Miller, supra.*

The petitioner argues that error occurred because he was wrongfully sentenced for three counts of malicious assault. He states that the three wounds serving as the basis for the three charges of malicious assault resulted from a single brief episode where the victim was attacked with a knife. As such, the petitioner contends that he should have only been charged with one malicious assault. The petitioner maintains that identical offenses committed during a single transaction are the same offense for double jeopardy purposes.

---

7. *See State v. Green,* 207 W.Va. 530, 534 S.E.2d 395 (2000), *infra.*

8. The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States is applied to the states by the Fourteenth Amendment. The Fifth Amendment as well as Article III, § 5 of the West Virginia Constitution protect criminal defendants from receiving "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65, (1969),

Conversely, the State argues that the petitioner's sentence is proper and that no error occurred below because the petitioner stabbed the victim with the intent to maim or disfigure her three separate times. The State contends that the appropriate unit of prosecution[7] is not mechanically tied to the number of wounds, or the time between the wounds, and the applicable statute shows a legislative intent to punish violent conduct motivated by malicious intent. The State further maintains that the jurors heard the evidence against the petitioner, considered it in light of the three separate charges in the indictment against him, and found him guilty of three separate malicious assaults.

■ This case requires this Court to resolve whether the petitioner's double jeopardy rights were violated for his three separate malicious assault convictions.[8] This Court has provided that three separate constitutional protections are contained within the guarantee that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see* W.Va. Const. art. III, § 5 (providing that "[n]o person shall . . . be twice put in jeopardy of life or liberty for the same offense").[9] As this Court explained in Syllabus Point 1 of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992),

> [t]he Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

9. This Court has held that "[o]ur double jeopardy principles have been patterned after the United States Supreme Court's interpretation of the Double Jeopardy Clause found in the Fifth Amendment to the United States Constitution." *State v. Rummer,* 189 W.Va. 369, 373, 432 S.E.2d 39, 43 (1993).

In Syllabus Point 2 of *Gill,* this Court further held:

"The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977).

As stated, the petitioner was convicted of the three remaining counts of malicious assault as included in the indictment. Count One stated:

That on or about November 22, 2009, in Ohio County, West Virginia, [the petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton *by cutting or stabbing her with a knife in the throat area,* or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable or kill the said Angela McGilton, against the peace and dignity of the State and in violation of West Virginia Code § 61–2–9(a).

(Emphasis added). Count Two stated:

That on or about November 22, 2009, in Ohio County, West Virginia, [the petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton *by cutting or stabbing her with a knife in the right neck area,* or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable or kill the said Angela McGilton, against the peace and dignity of the State and in violation of West Virginia Code § 61–2–9(a).

(Emphasis added). Count Three stated:

That on or about November 22, 2009, in Ohio County, West Virginia, [the petitioner] committed the felony offense of "Malicious Assault" by unlawfully, feloniously and maliciously cutting, stabbing and/or wounding Angela McGilton *by cutting or stabbing her with a knife in the back of her head,* or by any other means causing her bodily injury with the intent to permanently maim, disfigure, disable or kill the said Angela McGilton, against the peace and dignity of the State and in violation of West Virginia Code § 61–2–9(a).

(Emphasis added).

The petitioner argues that his convictions of these three counts of malicious assault resulted in a violation of his double jeopardy protection against cumulative punishments. He would have this Court make an ironclad ruling that as a matter of law anytime a person is stabbed multiple times, by the same person, within a short period of time, that the perpetrator of the crime can only be guilty of one malicious assault. Moreover, the petitioner asks this Court to make such a conclusion regardless of the specific circumstances of the crime and irrespective of whether a perpetrator actually formed the requisite intent each and every time he or she committed a separate malicious assault of a victim. The petitioner, however, does not cite to a single West Virginia case prohibiting multiple convictions for separate violations of West Virginia Code § 61–2–9(a), nor does he explain how the statute would preclude such subsequent convictions.

As explained in Syllabus Point 3 of *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996), "the purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." The United States Supreme Court has similarly recognized that the double jeopardy protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature[,] . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citations omitted).

562

Generally, "'[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syllabus Point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). Moreover, "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syllabus Point 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Court's admonition that we give the language of a statute a "commonsensical meaning." *United States v. Universal Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

In *State v. Green*, 207 W.Va. 530, 534 S.E.2d 395 (2000), this Court examined the uttering statute [10] to determine whether multiple convictions for ten separate counts of uttering that arose from the contemporaneous presentment of ten forged money orders was sustainable. As in this case, the issue of a double jeopardy violation arose from the prospect of multiple punishments being levied for the same offense. The *Green* Court explained that the analysis of "whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution." 207 W.Va. at 537, 534 S.E.2d at 402.

In upholding the convictions for the ten separate counts of uttering, the *Green* Court first determined that the unit of prosecution established by the Legislature in West Virginia Code § 61–4–5(a) (1998) (Repl.Vol.2000) was singular in nature. In making that determination, this Court looked to the term "any" and its use in the statute to conclude that the Legislature intended to permit each writing that was forged to constitute a separate offense. As the *Green* Court explained,

[s]ince we are dealing here with multiple charges under the same statutory provision, the question we must grapple with is how far the statute will permit the conduct at issue to be divided into separate criminal offenses. Put in proper nomenclature, the relevant inquiry must be confined to a determination of "[w]hat ... [the legislature] has made the allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952). *Blockburger* analysis,[11] by its own terms, applies only to the question of whether "the same act or transaction constitutes a violation of **two distinct statutory provisions.**" *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (emphasis [in original] ).[12] Thus, the same-elements test obviously provides no guidance where the issue concerns the allowable unit of prosecution under a single statutory provision.

10. W. Va.Code § 61–4–5 (1998) (Repl.Vol.2000).

11. See *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

12. In stating that the *Blockburger* test does not apply in situations involving multiple charges under the same statutory provision, the *Green* Court explained:

The parties' misplaced reliance on *Blockburger* is perhaps understandable, given this Court's past pronouncements regarding the exclusivity of such analysis. The State cites our recent admonition in *State v. Johnson*, 197 W.Va. 575, 585, 476 S.E.2d 522, 532 (1996), where we stated "that *Blockburger* is the only test to be used when determining whether multiple prosecutions have violated the double jeopardy constitutional provisions in the state and federal constitutions." The statement in *Johnson* concerning the exclusivity of the *Blockburger* test was made in the context of emphasizing that this jurisdiction no longer adheres to the "same-transaction" test for determining whether multiple prosecutions violate double jeopardy. While this point remains valid, the broad pronouncement in *Johnson* must be squared with the fact that the *Blockburger* same-elements test applies only where criminal conduct implicates two separate statutory provisions. To the extent that this statement in *Johnson* implies that *Blockburger* applies outside of that context, it is overly broad. 207 W.Va. at 538 n. 10, 534 S.E.2d at 403 n. 10.

207 W.Va. at 535–536, 534 S.E.2d at 400–401. The *Green* Court explained in detail why the *Blockburger* analysis was not applicable when the double jeopardy challenge involved multiple violations of a single statute. The *Green* Court stated:

> This limitation was recognized in *Sanabria v. United States,* 437 U.S. 54, 70 n. 24, 98 S.Ct. 2170, 2182 n. 24, 57 L.Ed.2d 43, 57 n. 24 (1978), where the United States Supreme Court indicated that *Blockburger* is inapplicable in cases involving multiple violations of a single statute. As one court adhering to *Sanabria* later observed, "[w]here two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." *United States v. Weathers,* 186 F.3d 948, 952 (D.C.Cir.1999) (citations omitted).

*Id.* The *Green* Court continued:

> In other words, the *Blockburger* rule "applies to determinations of whether [a legislature] intended the same conduct to be punishable under two criminal provisions," and is impertinent where multiple counts are charged under "the same criminal provisions." *United States v. Kimbrough,* 69 F.3d 723, 729 n. 5 (5th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). *See also State v. Adel,* 136 Wash.2d 629, 634, 965 P.2d 1072, 1074 (1998) (proper inquiry in a single-statute case is "what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute") (citation omitted); *Rashad v. Burt,* 108 F.3d 677, 679–80 (6th Cir.1997) ("The *Blockburger* test is insufficient where ... the concern is not multiple charges under separate statutes ...."), cert. denied, 522 U.S. 1075, 118 S.Ct. 850, 139 L.Ed.2d 751 (1998); *United States v. Keen,* 104 F.3d 1111, 1118 n. 12 (9th Cir.1996) (refusing to apply *Blockburger* test where only one statutory provision involved); *United States v. Christner,* 66 F.3d 922, 928 (8th Cir.1995) ("[W]here the double jeopardy challenge focuses on separate punishments or prosecutions for separate acts allegedly

violating the same statutory provision, the 'same elements' test, as enunciated in *Blockburger,* does not apply. In such cases, the issue is one of statutory intent.").

The petitioner's case is identical to the situation in *Green* to the extent that the *Blockburger* analysis is not applicable to his case because the double jeopardy challenge involved multiple violations of a single statute. Nonetheless, in spite of this Court's well-settled law regarding double jeopardy issues, the petitioner's argument fails to address in any manner the legislatively-intended unit of prosecution under W.Va.Code § 61–2–9(a) or as discussed in *Green.* Instead, the petitioner makes a skeletal argument followed by an unsupported conclusion that this Court's decision in *State v. Rummer,* 189 W.Va. 369, 432 S.E.2d 39 (1993), stands for the "general rule" that two events that occur within a brief period of time must be considered a single act. The petitioner's reliance on *Rummer* is misplaced.

The *Rummer* Court was concerned with the legislative intent behind the First Degree Sexual Abuse statute where a defendant was convicted of two counts of First Degree Sexual Abuse, ***under two separate provisions of the same statute,*** after he had forcibly rubbed the victim's vagina and fondled her breasts. 189 W.Va. at 372–373, 432 S.E.2d at 42–43. The defendant in *Rummer* claimed that his conduct, which had taken place so quickly, and violated the same statute, should only have given rise to a single count and that his two separate convictions under that same statute violated his protections under the double jeopardy clause. *Id.* This Court disagreed, upheld the defendant's conviction, and found there was not a violation of double jeopardy principles. *Id.* The *Rummer* Court applied the *Blockburger* test and explained that the "test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 189 W.Va. at 373, 432 S.E.2d at 43. As illustrated by *Green, supra,* the *Blockburger* test does not apply under the circumstances of the petitioner's case because the issue before us deals with multiple charges

*under the same statutory provision.* As such, the *Rummer* case has no application in this instance.[13]

More recently, in *State v. Myers,* 229 W.Va. 238, 728 S.E.2d 122 (2012), the defendant was convicted of three separate robberies resulting from a single episode that lasted approximately one minute. That defendant asserted that under *State v. Collins,* 174 W.Va. 767, 329 S.E.2d 839 (1984), he should only have been indicted on one count of robbery. In Syllabus Point 2 of *Collins,* this Court stated that

> [i]t is impossible to conclude from either the common law or W.Va.Code, 61–2–12, that an attempt to rob a store by presenting a firearm and leaving without taking any property can, in light of double jeopardy principles, result in multiple convictions of attempted aggravated robbery for each clerk present in such store.

The defendant argued that a single transaction took place in which three persons working for the One Stop convenience store were robbed at once and that he could only be indicted and prosecuted for one first degree robbery. According to the defendant, the accumulation of the charges violated his rights against double jeopardy.

In finding that no double jeopardy violations resulted from that defendant's conviction for all three robberies, this Court in *Myers* explained:

> In consideration of the record herein, the facts and circumstances of the petitioner's case are clearly distinguishable from *Collins.* In *Collins,* the defendant unsuccessfully attempted to rob the business. More specifically, this Court framed the issue in *Collins* as to whether: "only one count of attempted aggravated robbery could be charged because the property sought to be taken belonged to only one

owner, the Village Mart." The petitioner's reliance on *Collins* is misplaced. In fact, in *Collins,* this Court specifically addresses the possibility of the precise circumstance as set forth by the facts of the petitioner's case.

229 W.Va. at 249, 728 S.E.2d at 133. This Court noted that *State ex rel. Lehman v. Strickler,* 174 W.Va. 809, 811, 329 S.E.2d 882, 884 (1985), discussed the holding in *Collins* as follows:

> Recently in Syllabus Point 2 of *State v. Collins,* [174] W.Va. [767], 329 S.E.2d 839 (1984), we held that "an attempt to rob a store by presenting a firearm and leaving without taking any property can[not], in light of double jeopardy principles, result in multiple convictions of attempted aggravated robbery for each clerk present in such store." In the course of that opinion, we were careful not to foreclose the possibility of multiple punishments where there were several completed robberies, and the property taken belonged to several different victims, instead of a single entity such as a bank or store. Indeed, we recognized the possibility of multiple punishments in those circumstances in footnote 12 where we said that: "[I]f other patrons of a business are also robbed, separate robbery convictions are permissible. *See, e.g., Richardson v. State,* 429 N.E.2d 229 (Ind. 1981); *State v. Hutchison,* 228 Kan. 279, 615 P.2d 138 (1980); *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967)." 329 S.E.2d at 846.

229 W.Va. at 249, 728 S.E.2d at 133.

The Court in *Myers* found that there was no double jeopardy violation in charging, trying, and convicting the defendant of three counts of robbery. While the facts of *Myers* involved three separate victims, it is analo-

---

**13.** The *Rummer* Court, in *dicta,* found unpersuasive an argument that first degree sexual abuse should be considered like a battery due to the fact that both involve an unlawful touching. The *Rummer* Court mentioned in passing that "traditional double jeopardy analysis of a battery through legislative intent would fail to reveal any intention to create a separate crime based upon separate blows." 189 W.Va. at 379, 432 S.E.2d at 49. The *Rummer* Court did not preclude such a finding, however, as it further noted: "Courts that have discussed the battery question have not attempted a double jeopardy analysis based upon legislative intent. Instead, [other courts] conclude without any detailed analysis that multiple blows struck during the same battery are not separate crimes." *Id.* (Citations omitted). The *Rummer* Court then recognized that "where batteries are separated in time, two crimes are deemed to have occurred." *Id.* (Citation omitted).

gous to the petitioner's situation in that it involved three separate violations of the same statute, all occurring simultaneously, with the argument in both cases that the statute prohibited multiple punishments for conduct occurring during a single event. The Court in *Myers* found that the jury did not err in finding that the defendant had committed three separate acts by individually meeting the requirements for each crime even though the crimes occurred during a single transaction, and in spite of the fact that all of the crimes occurred within a matter of seconds. 229 W.Va. at 249–50, 728 S.E.2d at 133–134.

As this Court's holdings in *Green* and *Myers* demonstrate, multiple convictions are appropriate where a defendant performs separate acts that would support different violations of the same statute. Those decisions are consistent with how other courts throughout the country have resolved similar situations. *See People v. Partee,* 157 Ill. App.3d 231, 110 Ill.Dec. 845, 511 N.E.2d 1165, 1191 (1987) (ruling that the defendant's assault on the victim that resulted in lacerations to the victim's face and neck and of the ear canal, and a puncture wound to the neck, constituted multiple acts sufficient to support convictions on three counts of aggravated battery); *State v. Newman,* 326 N.W.2d 788, 793 (Iowa 1982) ("A defendant should not be allowed to repeatedly assault his victim and fall back on the argument his conduct constitutes but one crime."); *People v. Miller,* 284 Ill.App.3d 16, 219 Ill.Dec. 462, 671 N.E.2d 376, 384 (1996) (affirming the defendant's multiple convictions on the basis that the defendant's stabbing of the victim five times within brief period of time constituted separate and distinct acts); *People v. Mayes,* 257 Ill.App.3d 137, 196 Ill.Dec. 713, 630 N.E.2d 878, 889–890 (1993) (affirming the defendant's multiple convictions finding that the stabbing of the victim three times in the back and once in the forearm during struggle represented multiple acts); *State v. Ross,* 512 N.W.2d 830, 833 (Iowa Ct.App.1993) ("[M]ultiple violations of a single statute will support multiple convictions and punishments, even if a defendant commits all the violations in the same course of conduct." (citations omitted)); *Gonzales v. State,* 191 S.W.3d 741, 748 (2006) ("The commission of 'multiple discrete assaults against the same victim results in liability for separate prosecution and punishment for every instance of such criminal misconduct.' ") (quoting *Vernon v. State,* 841 S.W.2d 407, 410 (Tex.Crim.App.1992)); *Vick v. State,* 991 S.W.2d 830, 833 (Tex.Crim.App. 1999) (each "separate and distinct act" constitutes "separate and distinct statutory offense," even if all acts "are violations of a single statute"); *Ex parte Goodbread,* 967 S.W.2d 859, 860 (Tex.Crim.App.1998) ("For Double Jeopardy purposes, '[t]he same offense means the identical criminal act, not the same offense by name.' ") (quoting *Luna v. State,* 493 S.W.2d 854, 855 (Tex.Crim.App. 1973)); *Archie v. State,* 181 S.W.3d 428, 430–31 (Tex.App.–Waco 2005) (because indictment alleged and evidence showed two separate, distinct assaults, State was not required to make election and double jeopardy was not invoked) rev'd on other grounds by *Archie v. State,* 221 S.W.3d 695 (Tex.Crim.App. 2007); *Peckinpaugh v. State,* 743 N.E.2d 1238, 1242 (Ind.Ct.App.2001) ("where … a double jeopardy challenge is premised upon convictions of multiple counts of the same offense, the statutory elements test is inapplicable, because a defendant may be charged with as many counts of an offense as there are separate acts committed."); *People v. Beamon,* 8 Cal.3d 625, 639, 105 Cal.Rptr. 681, 504 P.2d 905 (1973) ("[If] the [defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.").

Turning to the language of W.Va. Code § 61–2–9(a), this Court finds that the Legislature's intention is plain and the statute is clear and unambiguous. The crime of malicious assault is set forth in W.Va.Code § 61–2–9(a), which provides:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction,

shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

The statute clearly and unambiguously sets forth the elements for a single violation of a malicious assault. There is nothing whatsoever in the statutory language that precludes a second charge of malicious assault when a second malicious assault actually occurs. The statutory language provides that both the conduct ("stab") and the result of the conduct ("cause him bodily injury") are phrased as singular terms. As in *Green, supra,* the singular nature of the statute represents a legislative intent to punish each violation of the statute separately.

In consideration of the plain meaning of W.Va.Code § 61-2-9(a), it is not a reasonable reading of this statute to conclude that a perpetrator can only be charged with one malicious assault simply because he or she managed to stab a victim multiple times very quickly—regardless of whether or not the elements of the crime were committed separately, distinctly, and contemporaneously with each stabbing. To the contrary, a common sense reading of the statute leads to the conclusion that the legislature intended for each "wound" or "bodily injury" motivated by an intent to "maim, disfigure, disable or kill" to be the proper unit of prosecution. When the State can prove both elements, i.e., the physical component (the "wound" or "bodily injury") *and* the mental component (the specific intent to "maim, disfigure, disable or kill."), it has made out a single unit of prose-

cution.[14] Moreover, the number of wounds is irrelevant if both elements are not met for each charged violation of the statute.

Using the petitioner's logic from his underlying argument, a perpetrator could take a knife and cut a victim's finger off with the intent to maim, disfigure, or disable a victim, then perform the same act with a second, third, fourth, and fifth finger, *each time forming the requisite intent* to maim, disfigure, or disable the victim, and the most that the perpetrator could ever be charged with would be one malicious assault. Under a separate scenario, a jealous ex-boyfriend could intend to maim or disfigure his ex-girlfriend two separate times by restraining her and cutting her on both sides of her face, each time forming the specific intent to disfigure her with each specific wound. Once again, in accordance with the petitioner's arguments herein, the ex-boyfriend could only face one crime regardless of the specific intent involved in the two separate and calculated acts. Such a narrow interpretation encourages additional criminal activity as there would be no incentive for a perpetrator to limit his or her criminal activity in any manner.

Moreover, whether or not each wound or injury can be coupled with the intent to "maim, disfigure, disable or kill" is a question of fact which may only be proven by examining the totality of the circumstances. As discussed in the case at hand, a jury convicted the petitioner of three separate malicious assaults committed against the victim on three separate parts of the victim's body. While the petitioner does not make a sufficiency of the evidence argument, a review of the record shows the presentation of evidence sufficient for the jurors to have concluded that the petitioner committed three separate violations of W.Va.Code § 61-2-9(a).[15] This Court has made clear that

---

**14.** The rule of lenity, which was not argued by the petitioner in this case, is likewise inapplicable because the statute is unambiguous. "In construing an ambiguous criminal statute, the rule of lenity applies which requires that penal statutes must be strictly construed against the State and in favor of the defendant." Syllabus Point 5, *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 465 S.E.2d 257 (1995). *See, e.g., State v. Green,* 207 W.Va. 530, 538 n. 13, 534 S.E.2d 395,

403 n. 13 (2000) ("Because we find the statutory text to be unambiguous ..., we do not consider the rule of lenity.") (Citation omitted).

**15.** In Syllabus Point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held:

The function of an appellate court when reviewing the sufficiency of the evidence to sup-

" 'the resolution of factual disputes in a criminal trial is a function of the jury[.]' " *State v. Duncan*, 179 W.Va. 391, 396, 369 S.E.2d 464, 469 (1988) (quoting *State v. Ashcraft*, 172 W.Va. 640, 646–47, 309 S.E.2d 600, 607 (1983)). In Syllabus Point 2 of *State v. Martin*, 224 W.Va. 577, 687 S.E.2d 360 (2009), this Court explained that: " 'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Syl. Pt. 2, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967)." This Court has also held that " '[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' Syl. pt. 3, *State v. Sprigg*, 103 W.Va. 404, 137 S.E. 746 (1927)." *State v. Biehl*, 224 W.Va. 584, 587, 687 S.E.2d 367, 370 (2009).

A reasonable juror could have found that the petitioner stabbed the victim several times by cutting or stabbing her with a knife in the throat area, in the right neck area, and in the back of her head. A reasonable juror could have also found that prior to each stabbing, the petitioner formed "the intent to permanently maim, disfigure, disable or kill" the victim. *See* W.Va.Code § 61–2–9(a). Testimony was presented explaining where the crimes occurred and when they occurred. Testimony further provided that the petitioner stabbed the victim twice in the neck, multiple times in the back of her head, once in the leg, and once in her ankle. The multiple stab wounds occurred during an argument between the petitioner and the victim concerning their pending divorce. The victim testified that as the petitioner was stabbing her, he was yelling "I'm going to fuc*ing kill you." She testified that she attempted to defend herself by lifting her "legs up to try to kick him away." She explained that she was able to escape to the bathroom to call 911. She also described and pointed out the location of each stab wound. She showed the jurors two separate scars on her neck as well as multiple locations on the back of her head where she had to get stitches for those stab wounds. She then described the stab wounds to the back of her left leg, her left ankle, on her arm, and numerous additional wounds on her head that became more noticeable to her after they had formed scabs.

As a result of the foregoing analysis, this Court concludes and now holds that a defendant may be convicted of multiple offenses of malicious assault under West Virginia Code § 61–2–9(a) (2004) against the same victim even when the offenses were a part of the same course of conduct. Such convictions do not violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution as long as the facts demonstrate separate and distinct violations of the statute. This Court must make clear, however, that this opinion does not stand for the proposition that every time a victim is stabbed multiple times that each stabbing will automatically result in multiple violations of W.Va.Code § 61–2–9(a). That is not the intention of our holding today and is not consistent with the facts herein. If a perpetrator stabs a victim multiple times, but the State fails to prove beyond a reasonable doubt that the perpetrator inflicted the wound or bodily injury with the specific intention to maim, disfigure, disable or kill the victim *for each and every count* of the indictment against that individual, convictions for multiple counts under that scenario cannot stand.

In consideration of all of the above, the circuit court did not err in upholding the three separate convictions of the petitioner in this case. No error having been found, it is unnecessary to perform the additional steps of a plain error or W.Va. R.Crim.P. Rule 35(a) analysis.

port a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

## IV.

### CONCLUSION

Accordingly, for the reasons stated above, we affirm the order of the Circuit Court of Ohio County entered on January 12, 2011.

Affirmed.

Chief Justice KETCHUM and Justice BENJAMIN dissent and reserve the right to file dissenting opinions.

KETCHUM, C.J., dissenting:

The defendant stabbed the victim during a single, brief episode. Following this single incident, the defendant was charged with three counts of malicious assault. Charging a defendant with three counts of malicious assault following a single incident is a clear double jeopardy violation.

In Syllabus Point 1 of *State v. Rummer*, 189 W.Va. 369, 432 S.E.2d 39 (1993), this Court held:

'The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution*, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.' Syllabus Point 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977).

Our *Constitution* prohibits multiple punishments for the same offense. The defendant was charged and sentenced on three counts of malicious assault following a single, brief incident. The defendant should have been charged with one count of malicious assault.

For this reason, I respectfully dissent. I am authorized by Justice Benjamin to state that he joins in this dissent.