No. 16-0670 – *In re Callaghan*

Matish, Judge, concurring in part and dissenting in part:

**FILED**

**February 9, 2017**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

The majority considers the recommendation[1] of the Judicial Hearing Board of two concurrent one-year periods of suspension without pay to be too lenient, instead ordering two consecutive one-year suspensions without pay be imposed, plus a $15,000 fine, costs, and a public reprimand. While I concur with the majority's reasoning as to the seriousness of this matter, I respectfully disagree as to the length of the suspension. The entire circumstance merits additional charges and punishment because, after reviewing the record presented and hearing oral argument, it is my opinion that the punishment is still not severe enough, because of the numerous violations that occurred with the so-called Obama flyer alone.

Judge-elect Callaghan committed, at minimum, three violations of the Code of Judicial Conduct, Rules 4.1(A)(9), 4.2(A)(1), and 4.2(A)(4), and one violation of the Rules of Professional Conduct, Rule 8.2(a), and, there needs to be, at least, a one-year suspension for each violation.

The Formal Statement of Charges put him on notice, without any violation of his due process rights, of numerous violations that occurred for each so-called Obama flyer

---

[1] Pursuant to Rule 4.8 of the Rules of Judicial Disciplinary Procedure, the Judicial Hearing Board "shall file a written recommended decision with the Clerk of the Supreme Court of Appeals."

1

mailed (the exact number is unknown), to the voters of Nicholas County, and over 6,700 voted in the election. Additionally, Judge-elect Callaghan claimed that his best tool in advertising was his personal and/or separate campaign Facebook pages. He estimated that he attracted at least hundreds of people, which for each occurrence of someone accessing his personal and/or separate campaign Facebook pages, caused his campaign to knowingly distribute information with reckless disregard for its truth, making false statements with respect to each repeated publication.

This Court has previously discussed the issue of multiple offenses occurring within the same course of conduct. In *State v. McGilton*, 229 W. Va. 554, 729 S.E.2d 876 (2012), the Court held a Defendant may be convicted of multiple offenses of malicious assault under West Virginia Code § 61-2-9(a) (2004) against the same victim even when the offenses were a part of the same course of conduct. Syl. Pt. 9, *Id*. The Court went on to explain such convictions do not violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution as long as the facts demonstrate separate and distinct violations of the statute. *Id*.

Additionally, the majority could have just as easily found violations for each untruthful statement of the so-called "Obama flyer," which included: (1) the photo-shopped pictures of President Obama and Judge Gary Johnson with the beer, since there was no party attended with President Obama where alcohol was served; (2) that Judge Johnson was not invited by the President; (3) that President Obama was not even present;

2

(4) that Judge Johnson did not go to the White House; and (5) none of this had anything to do with Judge Johnson defending jobs in Nicholas County. Each of these violations, having occurred in the so-called "Obama flyer" that was mailed to the voters and having been placed upon two separate Facebook posts, would amount to a multiplier of, at a minimum, three separate postings or publications, for a minimum of fifteen violations, in and of itself, justifying as much as a fifteen-year suspension.

Furthermore, four of Judge-elect Callaghan's flyers make reference to a Juvenile Drug Court fee and a "Hidden Price to Justice in Nicholas County" with respect to the so-called Juvenile Drug Court fee of $5 which, by virtue of West Virginia Code § 49-4-716, does not and could not exist with respect to funds being collected for a Juvenile Drug Court, but rather only exist with respect to a Teen Court, a totally unrelated type of treatment court. While Judge-elect Callaghan testified that he used these terms interchangeably, a first year law student, in five minutes, reviewing West Virginia Code § 49-4-716 and § 62-15-4, could tell they are not the same, and, in fact, Judge-elect Callaghan explained in his January 25, 2016, email to his media company that he knew the difference, yet he used untruthful information in these flyers.

Furthermore, one of Judge-elect Callaghan's flyers contains a color photocopy of a $100 bill, which appears to be a violation of 18 U.S.C.A. § 475, which prohibits using the likeness or similitude of any obligation of the United States in any notice, circular, handbill, or advertisement that is printed, distributed, circulated, or used. While there is

3

an exception under 31 C.F.R. § 411.1 that authorizes color illustrations, they must be of a size less than three-fourths or more than one and one half in linear dimension of an actual $100 bill and one-sided. The exhibit provided to the Court is one-sided, however, it does not appear to be less than three-fourths, nor is it more than one and one half in linear dimension of an actual $100 United States currency bill, assuming that, the exhibit is an actual sized photocopy of the notice, circular, handbill, or advertisement that was printed, distributed, circulated, or used. All of these additional violations were apparently tried by the parties by consent, and should have also been cause for appropriate sanctions, or at least considered as aggravating circumstances justifying additional sanctions.

As a country, we have gone far astray from what is right and what is good. We have become the most connected nation with our cell phones, smart phones, tablets, computers, and social media, while simultaneously becoming the most disconnected nation because of our cell phones, smart phones, tablets, computers, and social media. In trying to one up the next guy at his expense, we fail to realize that we harm ourselves in the process. Once you hit "Send," it is out there forever, and you cannot take it back.

As a judge or judicial candidate, you are expected to have a standard to live up to, not only in your personal life and how you conduct yourself on the bench, but how you run a campaign to secure the trust of the public in voting to elect you. It is disturbing to me that Judge-elect Callaghan admitted to reading the Code of Judicial Conduct when he decided to run. However, the Code of Judicial Conduct was later changed and adopted

4

December 1, 2015, yet Judge-elect Callaghan, in his testimony, never admitted to stating specifically that he read the new Code of Judicial Conduct nor talked about any Code of Judicial Conduct to the media company he hired. Also, the media company admitted to not having talked with Judge-elect Callaghan about it either.

The falsity used by Judge-elect Callaghan in his campaign perpetrated a fraud upon the voters of Nicholas County, the 28th Judicial Circuit. By his own actions, he has shown that he is unfit to hold a judicial office, and, at the appropriate time, a new election should be held.

Judge-elect Callaghan may very well have won the election fair and square based upon other factors in Nicholas County, or the fact he pointed to in one of his other flyers that after a certain amount of time, things need changed, but instead he resorted to certain falsities, which definitely are not to be tolerated in a judicial election. We may now live in a world of "fake news" and "alternate facts," but if we cannot trust, honor, and respect our Judges and Justices, who can we trust?

Since Judge-elect Callaghan was first an attorney running for a judicial office, I would give him a one-year suspension as an attorney, followed by a year for each violation of the Code of Judicial Conduct, for a total suspension of four years. However, the possibility exists under the facts of this case that the suspension could be for much longer, as stated above. Therefore, I respectfully dissent as to the length of punishment,

5

and would order Judge-elect Callaghan to serve four one-year consecutive periods of suspension from the bench, without pay, in addition to the fines and costs imposed by the majority.