534 S.E.2d 395

STATE of West Virginia, Plaintiff Below, Appellee and Cross–Appellant,

v.

Mary Margaret GREEN, Defendant Below, Appellant and Cross–Appellee.

No. 27000.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2000.

Decided July 10, 2000.

Jason E. Huber, Esq., Forman & Crane, L.C., Charleston, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

Petitioner below and appellant herein, Mary Margaret Green, was sentenced to eight consecutive one-to-ten year terms of imprisonment after pleading guilty to ten counts of uttering in violation of W. Va.Code § 61–4–5(a). Green now appeals asserting that the Circuit Court of Cabell County, in granting habeas corpus relief on her claim that such multiple sentences violated double jeopardy principles, erred by failing to vacate all but one of her convictions and reduce her sentence to a single term, so as to correspond to the court's determination that her guilty plea encompassed only one offense of uttering. The State cross-assigns error, arguing that the circuit court erred by ruling that Green's admitted conduct of uttering several forged instruments during one transaction constituted a single crime. We find merit in the State's argument, and accordingly reverse.

## I.

### BACKGROUND

Green was indicted in September 1992 on 32 counts of forgery, uttering, and obtaining goods by false pretenses.[1] She subsequently entered into a plea agreement with prosecutors wherein she agreed to plead guilty to uttering as set forth in Counts 1 through 10 of the indictment,[2] in exchange for dismissal of the remaining charges.

---

1. The indictment set out the charges in reverse-chronological order. Counts 1 through 10 of the indictment collectively charged that on April 7, 1992, Green uttered ten forged money orders to the Twentieth Street Bank of Huntington, West Virginia; Counts 11 through 20 alleged that she forged these same money orders; Counts 21 through 25 collectively charged Green with uttering five money orders to One Valley Bank in Huntington on March 31, 1992; Counts 26 through 30 averred that she also forged these money orders; Count 31 alleged that on March 20, 1992, Green obtained a check writing ma-

chine by false pretenses; and Count 32 charged Green with forgery in connection with the falsification of a purchase order drawn on the account of State Electric Company.

2. Counts 1 through 10 were worded identically as follows, the only difference being reference to separate serial numbers:

   That on or about the 7th day of April, 1992, in the County of Cabell, State of West Virginia, MARY MARGARET GREEN committed the offense of "UTTERING" by unlawfully and feloniously presenting a certain money order to an

A plea hearing was conducted pursuant to W. Va. R.Crim. P. 11 on June 4, 1993, where it was established that Green obtained money orders at a SuperAmerica convenience store in Chesapeake, Ohio; altered the amount of the instruments from $40 to $400; and forged endorsements on each. Later, on April 7, 1992, she presented ten of these forged money orders, together with a single deposit slip, to a teller at the Twentieth Street Bank in Huntington, West Virginia. Green deposited a portion of the money into the checking account of a third-party, and received the balance of the proceeds in cash. During the plea hearing, Green acknowledged that under the terms of the plea agreement she could receive consecutive one-to-ten year sentences on each of the ten counts, with a maximum possible sentence of 100 years.

The circuit court subsequently sentenced Green to one-to-ten years imprisonment on each count, with Counts 1 through 8 to be served consecutively, and Counts 9 and 10 to each be served concurrently with Count 8. No appeal was taken, nor was there any claim before the sentencing court that the multiple convictions or consecutive sentences violated double jeopardy limitations.

Green later filed two *pro se* actions for post-conviction relief in the Circuit Court of Cabell County under the West Virginia Post-Conviction Habeas Corpus Act, W. Va.Code §§ 53–4A–1 to –11. The first, filed on January 20, 1995 (Case No. 95–C–39), alleged that the consecutive sentences imposed by the trial court violated double jeopardy proscriptions by imposing multiple punishments for what was asserted to be a single crime. This petition was dismissed without a hearing by order entered October 24, 1995, on the ground that the double jeopardy claim was waived by entry of a counseled guilty plea.

The second petition for habeas relief, filed on August 20, 1996 (Case No. 96–C–558),

challenged the multiple sentences on the grounds of double jeopardy, disproportionality, and cruel and unusual punishment. This petition was also dismissed by the circuit court on September 27, 1996, on the ground that such claims had been previously adjudicated.

On May 6, 1998, Green filed a *pro se* petition for habeas corpus relief under this Court's original jurisdiction, claiming that her consecutive sentences violated double jeopardy and proportionality principles, and that trial counsel was ineffective in failing to challenge the multiple sentences imposed following entry of her guilty plea. The Court issued a writ of habeas corpus on September 30, 1998, returnable to the Circuit Court of Cabell County (Case No. 96–C–627), for the purpose of conducting an omnibus habeas corpus hearing pursuant to *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

At the omnibus hearing, where she was represented by counsel, Green further substantiated her double jeopardy claim by succinctly testifying that "this was one crime. I passed these money orders as a set of ten with one teller with one deposit slip. It was one transaction." The State did not present any evidence to refute this allegation, but instead argued that Green waived her double jeopardy claim by pleading guilty to the ten uttering offenses.

At the conclusion of a hearing held on January 29, 1999, the circuit court ruled as a matter of law that Green's double jeopardy claim had not been waived by entry of a guilty plea,[3] and further found that the conduct encompassed by the ten pleaded-to counts of the indictment were part of "one continuous transaction," thus warranting relief. As a remedy, the court from the bench ordered that all ten counts be served concurrently. The written order subsequently entered on April 15, 1999, however, modified

---

employee of the 20th Street Bank, Huntington, Cabell County, West Virginia, said money order being number _____, made payable to Roberta Chapman, in the amount of Four Hundred Dollars, which said money order the signature of Omi Chapman was forged, and the said MARY MARGARET GREEN, did utter and employ the aforesaid money order as true, with

the intent to defraud, and to the prejudice of another's right and knowing the same to be forged, against the peace and dignity of the State.

3. The State does not advance this waiver argument on appeal, and we therefore do not address the issue.

Green's sentence to effectively impose two consecutive terms, rather than the single term indicated by the earlier bench ruling.[4] Shortly thereafter, Green pointed out this inconsistency in a *pro se* "Motion for Correction of Sentence," filed on April 19, 1999. The circuit court never ruled on this motion, although it did respond to a later inquiry by stating in correspondence that "the Order reflects a change of opinion." No other basis for the particular relief ordered by the circuit court is apparent in the record. It is from this April 15, 1999 order that both Green and the State now appeal.

## II.

### STANDARD OF REVIEW

In this challenge to the circuit court's rulings on a petition seeking habeas corpus relief, we apply the broadly-applicable standard enunciated in *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995): "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *See also* syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). As we have repeatedly stressed, "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212

S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). *See also Stuckey v. Trent*, 202 W.Va. 498, 501, 505 S.E.2d 417, 420 (1998); syl. pt. 2, *State ex rel. Kidd v. Leverette*, 178 W.Va. 324, 359 S.E.2d 344 (1987).

## III.

### DISCUSSION

Both parties in this case challenge the circuit court's final order. Green argues that having established that she effectively pleaded guilty to only one uttering offense under W. Va.Code § 61–4–5(a), the circuit court was required to vacate all but one of her convictions, and reduce her sentence to a single one-to-ten year term. The State brings a cross-assignment of error pursuant to W. Va. R.App. P. 10(f),[5] challenging the substantive law applied by the circuit court. Specifically, it asserts that under the facts of this case, where petitioner acknowledged having presented multiple forged instruments during the course of a single transaction, Green could be convicted and punished under § 61–4–5(a) with respect to each forged item passed. We find this latter issue to be dispositive.

### A. *Blockburger Inapposite*

Among the protections afforded criminal defendants by the Double Jeopardy Clauses of the West Virginia and federal constitutions [6] is the prohibition against multiple punishments for the same offense. *See* syl. pt. 5, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996); syl. pt. 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977).[7] In this case, whether Green's several convictions and sentences amount to con-

---

4. The circuit court's final order did not address Green's claims of disproportionate punishment or ineffective assistance of counsel.

5. The State's right to appeal an adverse ruling in habeas corpus is expressly provided by statute. W. Va.Code § 53–4A–9(a) (1967).

6. W. Va. Const. art. III, § 5 states, in relevant part, that "[n]o person shall ... be twice put in jeopardy of life or liberty for the same offence." The Fifth Amendment to the United States Constitution similarly provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]"

7. In syllabus point one of *Conner*, the Court set forth the following three-part classification of the protections afforded by the Double Jeopardy Clause:

> The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.

stitutionally impermissible multiple punishment turns on the question of whether the passing of several forged instruments at one time and place in the course of a single transaction comprises one or multiple offenses under W. Va.Code § 61–4–5(a).

As an initial matter, we note that both parties, although they reach different conclusions, approach the present issue using the same-elements test enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and substantially adopted by this Court in *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983).[8] Reliance on the *Blockburger* rule in this context, however, is misplaced.

■ The protections afforded by the Double Jeopardy Clause place few, if any, limitations on a legislative body's power to delineate criminal offenses and fix their punishment, *see State v. Rummer,* 189 W.Va. 369, 374, 432 S.E.2d 39, 44 (1993); *State v. Gill,* 187 W.Va. 136, 141, 416 S.E.2d 253, 258 (1992); rather, the prohibition merely acts "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments," syl. pt. 3, *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996). *See also State v. Myers,* 171 W.Va. 277, 280, 298 S.E.2d 813, 816 (1982) ("The double jeopardy bar against multiple punishments is to prohibit judges from imposing more penalty than the legislature has sanctioned.") (citation omitted); *State v. Gill,* 187 W.Va. at 141, 416 S.E.2d at 258 (" 'With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' ") (quoting *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983)).

■ The primary issue that arises in this context is whether particular offenses

are the same for double jeopardy purposes— a question that is invariably resolved by ascertaining legislative intent. "A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." Syl. pt. 7, *State v. Gill, supra.* In other words, the Double Jeopardy Clause takes the substantive criminal law as it finds it. As we further explained in *Gill,*

> a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

Syl. pt. 8, *Gill.* The *Blockburger* test is merely a rule of construction premised on an underlying presumption that "the Legislature [does] not intend to punish the same offense under two different statutes." *Sears,* 196 W.Va. at 82, 468 S.E.2d at 335 (citation omitted). Consequently, it has no application where the Legislature's intent as to multiple punishments is otherwise clear. *See Zaccagnini,* 172 W.Va. at 502, 308 S.E.2d at 142; *see also Sears,* 196 W.Va. at 76, 468 S.E.2d at 329 (*Blockburger* test inapplicable where there is a "clear and definite statement of intent by Legislature that cumulative punishment is permissible").

■ Since we are dealing here with multiple charges under the same statutory provision, the question we must grapple with is how far the statute will permit the conduct at issue to be divided into separate criminal offenses. Put in proper nomenclature, the

---

**8.** In syllabus point eight of *Zaccagnini,* we held that "[w]here the same act or transaction constitutes a violation of *two distinct statutory provisions,* the test to be applied to determine whether

there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." (Emphasis added.)

relevant inquiry must be confined to a determination of "[w]hat ... [the legislature] has made the allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952).[9] *Blockburger* analysis, by its own terms, applies only to the question of whether "the same act or transaction constitutes a violation of *two distinct statutory provisions.*" *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (emphasis added).[10] Thus, the same-elements test obviously provides no guidance where the issue concerns the allowable unit of prosecution under a single statutory provision.

> [I]f the prosecutions are under the same statute, a pure *Blockburger* test, focused on the statutory elements, is not helpful. The statutory elements are identical because the statutes are the same. A defendant can be prosecuted separately for successive violations of the same statute, such as thefts of two automobiles. The propriety of the separate prosecution turns on whether the charges reflect separate violations of the statute. Thus, *Blockburger* provides no guidance.

Anne Bowen Poulin, *Double Jeopardy Protection Against Successive Prosecutions in Complex Criminal Cases: A Model*, 25 Conn. L.Rev. 95, 118 (1992).

This limitation was recognized in *Sanabria v. United States*, 437 U.S. 54, 70 n. 24, 98 S.Ct. 2170, 2182 n. 24, 57 L.Ed.2d 43, 57 n. 24 (1978), where the United States Supreme Court indicated that *Blockburger* is inapplicable in cases involving multiple violations of a single statute. As one court adhering to *Sanabria* later observed, "[w]here two viola-

tions of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the *Blockburger* test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." *United States v. Weathers*, 186 F.3d 948, 952 (D.C.Cir.1999) (citations omitted). In other words, the *Blockburger* rule "applies to determinations of whether [a legislature] intended the same conduct to be punishable under two criminal provisions," and is impertinent where multiple counts are charged under "the same criminal provisions." *United States v. Kimbrough*, 69 F.3d 723, 729 n. 5 (5th Cir.1995), *cert. denied*, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). *See also State v. Adel*, 136 Wash.2d 629, 634, 965 P.2d 1072, 1074 (1998) (proper inquiry in a single-statute case is "what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute") (citation omitted); *Rashad v. Burt*, 108 F.3d 677, 679–80 (6th Cir.1997) ("The *Blockburger* test is insufficient where ... the concern is not multiple charges under separate statutes...."), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 850, 139 L.Ed.2d 751 (1998); *United States v. Keen*, 104 F.3d 1111, 1118 n. 12 (9th Cir.1996) (refusing to apply *Blockburger* test where only one statutory provision involved); *United States v. Christner*, 66 F.3d 922, 928 (8th Cir.1995) ("[W]here the double jeopardy challenge focuses on separate punishments or prosecutions for separate acts allegedly violating the same statutory provision, the 'same elements' test, as enunciated in *Blockburger*, does not apply. In such cases, the

---

**9.** By contrast, *Blockburger* is applicable in so-called "double-description" cases, where the focus is on whether the criminal proscriptions in two separate statutes constitute the same offense for double jeopardy purposes. *See* Peter Western & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup.Ct. Rev. 81, 111.

**10.** The parties' misplaced reliance on *Blockburger* is perhaps understandable, given this Court's past pronouncements regarding the exclusivity of such analysis. The State cites our recent admonition in *State v. Johnson*, 197 W.Va. at 585, 476 S.E.2d at 532, where we stated "that *Blockburger* is the only test to be used when determining whether multiple prosecutions have violated the

double jeopardy constitutional provisions in the state and federal constitutions." The statement in *Johnson* concerning the exclusivity of the *Blockburger* test was made in the context of emphasizing that this jurisdiction no longer adheres to the "same-transaction" test for determining whether multiple prosecutions violate double jeopardy. While this point remains valid, the broad pronouncement in *Johnson* must be squared with the fact that the *Blockburger* same-elements test applies only where criminal conduct implicates two separate statutory provisions. To the extent that this statement in *Johnson* implies that *Blockburger* applies outside of that context, it is overly broad.

issue is one of statutory intent."). *See generally* George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U. Pitt. L.Rev. 1, 23–25 & n. 115 (1985) (criticizing cases that erroneously applied *Blockburger* in unit-of-prosecution context).

Thus, where a double jeopardy challenge is brought to multiple punishments arising under the same statutory provision, the "same-elements" test of *Blockburger* does not apply. Instead, whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution.

### B. Unit of Prosecution for Uttering

The courts of this jurisdiction have never squarely addressed the question of the proper unit of prosecution for uttering.[11] Green relies heavily upon *State v. Riley*, 169 W.Va. 354, 287 S.E.2d 502 (1982). In that case, the defendant was charged by eight separate indictments with the forgery and uttering of a like number of checks. Although the defendant was initially acquitted at trial with respect to the charges contained in one of the indictments, the State later obtained convictions for forgery and uttering under a remaining indictment. Noting that the case involved "separate forgeries and utterances of separate checks that were cashed at separate places and at separate times," the Court rejected the defendant's double jeopardy claim, stating that "[t]he only thread common to all these checks was that they were allegedly written on the same check-writing machine. This fact alone is not enough to evoke double jeopardy." 169 W.Va. at 356, 287 S.E.2d at 504. *Riley* does not conflict with the notion that passing several forged instruments at the one time constitutes a single offense, but neither does it necessarily support such a proposition. In *Riley*, we merely concluded that the defendant's alleged conduct involved entirely separate transactions, and therefore the defendant had no factual basis upon which to assert a double jeopardy claim such as advanced by Green here.

The State in its brief offers the following interpretation of the uttering offense delineated within § 61–4–5(a): "[G]iven that the statute provides for punishment for uttering a single forged writing, it may reasonably be concluded that the uttering of several different forged writings may give rise to multiple punishments for related crimes." The underlying argument here is that because the statute uses of the term "writing" in its singular form, the proper unit of prosecution for uttering must correspondingly be the number of individual writings passed.

There is support for the State's grammatical reliance upon the statute's use of singular terms. In *Williams v. West Virginia Dep't of Motor Vehicles*, 187 W.Va. 406, 419 S.E.2d 474 (1992) (per curiam), the Court was called upon to determine the reach of W. Va.Code § 17D–2A–7(a), which provides, in part, as follows: *"Any owner* of a motor vehicle ... who fails to have the required security in effect at the time such vehicle is being operated upon the roads or highways of this State, shall have *his* operator's or chauffeur's license suspended by the commissioner ...."
(Emphasis added.) The question was whether suspensions could be imposed upon more than one co-owner of an automobile. This Court answered that question in the negative, finding that

> in the context of W. Va.Code, 17D–2A–7(a), "any" must mean "one" or "either." It is clear from the authorities cited herein that "any" may be used in either a singular or

---

11. The issue was touched upon, but not decided, in an early Virginia case. In *Summerfield v. Commonwealth*, 41 Va. (2 Rob.) 767 (1843), the defendant was charged by separate indictments with passing two counterfeit coins to two different persons on the same day. After he was acquitted on one charge, the defendant petitioned for bail on the other, arguing, *inter alia,* that the two charged offenses were "but one offense in law." In doing so, the defendant attempted to draw an analogy to *The King v. Thomas*, 168 Eng. Rep. 537, 539–40 (K.B.1800), where an English court had held that the utter-

ing of several instruments at one time constituted but one indictable offense. The defense in *Summerfield* argued:

> It is certainly not impossible for a man to pass two different pieces of coin, and to two different persons, under such circumstances as to make it but a single simultaneous and continuous act of passing; as much so as the uttering of several forged receipts, which it has been decided may constitute only one offense.

41 Va. (2 Rob.) at 769 (citations omitted). The court refused the request for bail without elaboration.

plural form. In this instance, the legislature used "any" in a singular context. All references to when the statute is applicable are in the singular. Furthermore, the legislature could easily have chosen the word "all," which much more clearly stresses a plural form than "any," when wording a statute.

187 W.Va. at 409–10, 419 S.E.2d at 477–78 (footnote omitted).

 West Virginia Code § 61–4–5(a) clearly supports charging Green with separate offenses based upon each document uttered. That section provides:

> If any person forge *any writing*, . . . to the prejudice of another's right, or utter or attempt to employ as true *such forged writing,* knowing *it* to be forged, he shall be guilty of *a* felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars.

*Id.* (emphasis added).[12] As it did with respect to the statute at issue in *Williams,* the Legislature here has used "any" in the context of a singular noun, in this case "writing." The only logical result that could be reached after examining § 61–4–5(a) is that each time a person utters a forged document, "he shall be guilty of a felony."

 "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). By its express terms, § 61–4–5(a) clearly and unambiguously provides for separate punishments for each forged document

uttered.[13] We therefore hold the circuit court erroneously concluded that a double jeopardy violation occurred based upon Green's multiple convictions and sentences.

## IV.

## CONCLUSION

 For the reasons stated, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded for further proceedings consistent with this opinion.[14]

Reversed and remanded.

---

12. This paragraph was designated subsection (a) when the statute was amended in 1998, by adding an additional subsection pertaining to the forgery and uttering of bank drafts. The above-quoted language remained unaltered. In the interest of future clarity, we refer throughout this opinion to the amended (and thus subdivided) statute.

13. Because we find the statutory text to be unambiguous regarding unit of prosecution, we do not consider the rule of lenity. *See State v. Sears,* 196 W.Va. 71, 81, 468 S.E.2d 324, 334 (1996) ("when the Legislature fails to indicate the allow-

able unit of prosecution and sentence with clarity, doubt as to the legislative intent should be resolved in favor of lenity for the accused") (footnote omitted).

14. We note that the circuit court never ruled on Green's claim of disproportionate punishment. Thus, she may still pursue this claim upon remand. We observe that under the facts of this case, we do not believe that the circuit court would err in concluding that the court's original modification of Green's sentence was warranted relief under this claim.