IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

FILED

September 12, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0256

_____

STATE OF WEST VIRGINIA,
Respondent

V.

RONALD GOINS,
Petitioner

_____

Appeal from the Circuit Court of Mercer County
Honorable Omar J. Aboulhosn, Judge
Criminal Action No. 11-F-61

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED
_____

Submitted:  September 4, 2013
Filed:  September 12, 2013

David C. Smith                           Patrick Morrisey
Public Defender Corporation              Attorney General
Princeton, West Virginia                 Benjamin F. Yancey, III
Attorney for Petitioner                  Assistant Attorney General
                                         Charleston, West Virginia
                                         Attorneys for Respondent


JUSTICE DAVIS delivered the Opinion of the Court.

JUSTICES WORKMAN AND LOUGHRY concur and reserve the right to file
concurring opinions.

**SYLLABUS BY THE COURT**

1. "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Syllabus point 1, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992).

3. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same

offense after conviction. It also prohibits multiple punishments for the same offense."

Syllabus point 1, *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977).

4.     The analysis of whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution.

5.     The focus of the unit of prosecution under the brandishing statute, W. Va. Code § 61-7-11 (1994) (Repl. Vol. 2010), is not dependent upon the number of victims present when a deadly weapon is used to breach the peace. Therefore, a single incident of brandishing may not be punished as multiple offenses merely because there are two or more victims present or affected thereby.

**Davis, Justice:**

This is a criminal appeal filed by Ronald Goins (hereinafter "Mr. Goins") from an order of the Circuit Court of Mercer County convicting him of five counts of misdemeanor brandishing. The circuit court sentenced Mr. Goins to five consecutive one year terms of incarceration.[1] In this appeal, Mr. Goins contends that his sentences for five counts of brandishing violate the Double Jeopardy Clauses of the state and federal constitutions. He also asserts that the evidence was insufficient to sustain the convictions. After a careful review of the briefs, the record submitted on appeal and listening to the arguments of the parties, we affirm, in part, reverse, in part and remand for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In 2010, Mr. Goins lived with his wife, Cynthia Goins, in their home on twenty-two acres of rural land in Rock, West Virginia.[2] On July 28, 2010, Mr. Goins began drinking while at home and got into an argument with his wife. The argument caused Mrs. Goins to take the family van and drive to her mother's home. However, the vehicle broke

---

[1]The sentences originally were suspended, and Mr. Goins was placed on probation. However, as a result of a violation of the terms of probation, Mr. Goins' sentence was modified, and he was sentenced to jail for one year, to be followed by fours years of probation.

[2]The couple is now divorced.

1

down before she could reach her mother's residence. Mrs. Goins called her husband to come and get her. Mr. Goins agreed and left the home with his father.[3] Mrs. Goins was able to get the van started before her husband arrived. While Mrs. Goins was driving the van back toward her home, she saw Mr. Goins and his father. Both vehicles stopped at an intersection, and Mr. Goins got into the van with Mrs. Goins. After Mrs. Goins started driving the van, the couple began arguing. Mrs. Goins stopped the vehicle. Mr. Goins' father pulled up behind the van and told Mr. Goins to get into his car. Mr. Goins remained in his father's car until they arrived at a local store. After Mr. Goins made a purchase from the store, he got back into the van with his wife, and the couple drove home.

When the couple arrived home, Mr. Goins began drinking again. Mrs. Goins became upset and told her husband that she was going to tell her mother to come over and pick her up. Mr. Goins became angry and pulled the phone cord out of the wall. Mr. Goins eventually went to bed. After Mr. Goins went to sleep, Mrs. Goins took the couple's two infant children and left the house. Mrs. Goins walked with the children to the home of a neighbor about a mile away. While at the neighbor's home, Mrs. Goins called her brother, Joseph Tiller, and told him to come and get her.[4]

---

[3]Mr. Goins' father actually drove him to meet his wife.

[4]Mrs. Goins also called her mother, but her mother was out of town.

2

Mr. Tiller got into his vehicle, with his wife and their three children, and drove to the area where Mrs. Goins said she would be waiting. After Mr. Tiller reached the area where Mrs. Goins told him she would be, he could not find her. Mr. Tiller decided to drive toward Mrs. Goins' home in hopes of finding her along the way. Mr. Tiller stopped his vehicle about 150 yards from Mrs. Goins' home. Mr. Goins, who had awakened, was outside the home and sitting inside his van. Mr. Tiller stared at Mr. Goins for several minutes before Mr. Goins got out of the van. When Mr. Goins left the van, he aimed a pistol in the direction of the Tillers' vehicle and fired numerous times– the bullets landed within several feet of the vehicle. Mr. Tiller fled the scene and called the police.

In February 2011, a grand jury indicted Mr. Goins on one count of domestic battery, one count of domestic assault, and five counts of wanton endangerment.[5] A jury trial was held in December 2011. The jury acquitted Mr. Goins of the wanton endangerment charges[6] but found him guilty of five counts of the lesser included offense of brandishing.[7]

---

[5]Mrs. Goins was the alleged victim of the domestic battery and assault charges. Mr. Tiller and his family were the alleged victims of the wanton endangerment charges.

[6]The jury also acquitted Mr. Goins of the domestic battery charge. The prosecution dismissed the domestic assault charge prior to trial.

[7]*See* Syl. pt. 5, *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002) ("The offense of brandishing as defined by West Virginia Code § 61-7-11 is a lesser included offense within the definition of wanton endangerment under West Virginia Code § 61-7-12.").

On January 18, 2012, the circuit court sentenced Mr. Goins to five consecutive terms of one year in jail but ordered the sentences be suspended and placed Mr. Goins on probation for five years. On April 17, 2012, the court revoked Mr. Goins' probation after determining that he had used a controlled substance while on probation. The court ordered Mr. Goins be confined in jail for one year, and that after serving the one year jail sentence, the remaining sentences would be suspended, and Mr. Goins would be placed on probation for four years. Thereafter, this appeal was timely filed.

## II.

## STANDARD OF REVIEW

Mr. Goins contends that double jeopardy principles prevented him from being sentenced for five counts of brandishing, and that the evidence was insufficient to convict him. This Court has held that a "double jeopardy claim [is] reviewed *de novo*." Syl. pt. 1, in part, *State v. Sears*, 196 W. Va. 71, 468 S.E.2d 324 (1996). *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With respect to a claim of insufficiency of evidence, we have held the following:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable

4

person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). With these standards in place we will address the issues presented.

## III.

## DISCUSSION

On appeal to this Court, Mr. Goins raises two assignments of error: (1) his multiple sentences for a single incident of brandishing violates double jeopardy principles and (2) the evidence was insufficient to sustain his conviction. We will address each issue individually.

### *A. Double Jeopardy Claim*

Mr. Goins argues that merely because five people were present when he fired his pistol did not mean that five separate incidents of brandishing occurred.[8] In other words, assuming the evidence was sufficient to support a conviction for brandishing, Mr. Goins argues that he could be sentenced for only one incident of brandishing, not five instances of brandishing. Mr. Goins contends that double jeopardy principles preclude multiple

---

[8]Mr. Goins also points out that the evidence at trial established that two of the children in the Tillers' vehicle were asleep when the shots were fired.

punishments for a single offense.

We begin our analysis by observing that in Syllabus point 1 of *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992), this Court held the following regarding double jeopardy under the federal constitution:

> The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

Similarly, in Syllabus point 1 of *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977), we held the following regarding double jeopardy under the state constitution:

> The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.[9]

(Footnote added).

In this proceeding, Mr. Goins invokes the third double jeopardy prohibition, i.e.,

---

[9]In *Adkins v. Leverette*, 161 W. Va. 14, 239 S.E.2d 496 (1977), which involved constitutional double jeopardy issues, this Court stated "[w]hile it is true that a state may not interpret its constitutional guarantee which is identical to a federal constitutional guarantee below the federal level, nothing prevents a state court from equaling or exceeding the federal standard." *Adkins*, 161 W. Va. at 19-20, 239 S.E.2d at 499.

6

multiple punishments for the same offense.

In *State v. Green*, 207 W. Va. 530, 534 S.E.2d 395 (2000), this Court explained, and we so hold, that the analysis of "whether a criminal defendant may be separately convicted and punished for multiple violations of a single statutory provision turns upon the legislatively-intended unit of prosecution." *Green*, 207 W. Va. at 537, 534 S.E.2d at 402.[10] Thus, we must look to the applicable penal statute to determine the legislatively-intended unit of prosecution for brandishing. The determination of the allowable unit of prosecution is a task of statutory construction. This Court has held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Moreover, "[a]bsent an explicit

[10]When a claim of double jeopardy involves a prosecution under two statutes we employ the *Blockburger* test. *See* Syl. pt. 7, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992) ("In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses."). *Blockburger* analysis, by its own terms, is applicable only to the issue of whether "the same act or transaction constitutes a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182, 76 L. Ed. 306. Therefore "the same-elements test obviously provides no guidance where the issue concerns the allowable unit of prosecution under a single statutory provision." *Green*, 207 W. Va. at 536, 534 S.E.2d at 401.

7

[legislative] statement that 'the allowable unit of prosecution shall be such-and-such,' the best indicator of legislative intent regarding the unit of prosecution is the gravamen or focus of the offense." *Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011).

In the instant proceeding, the relevant language under our brandishing statute provides as follows:

> It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace.[11]

W. Va. Code § 61-7-11 (1994) (Repl. Vol. 2010) (footnote added). The relevant unit of prosecution under W. Va. Code § 61-7-11 requires a person "carry, brandish, or use a deadly weapon in a manner to cause or threaten a breach of the peace." *State v. Bell*, 211 W. Va. 308, 313, 565 S.E.2d 430, 435 (2002).[12] To properly evaluate the unit of prosecution under the statute, we will examine two cases from other jurisdictions. In *Kelsoe v. Commonwealth*,

---

[11]Although our cases refer to this statute as the brandishing statute, it is clear that the statute sets out additional offenses.

[12]    The phrase "breach of the peace" has a wide and general application and meaning and comprehends disturbances of the public peace violative of order and decency or decorum; it signifies the disquieting of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace or cause consternation or alarm.

*Marcuchi v. Norfolk & W. Ry. Co.*, 81 W. Va. 548, 553, 94 S.E. 979, 981 (1918). *Accord* Syl. pt. 7, *State v. Long*, 88 W. Va. 669, 108 S.E. 279 (1921).

8

308 S.E.2d 104 (Va. 1983), the Supreme Court of Virginia found that the defendant's multiple punishments for brandishing a weapon at three persons did not violate double jeopardy principles. The statute involved in *Kelsoe* made it unlawful "'to point or brandish any firearm . . . in such a manner as to reasonably induce fear in the mind of the victim.'" *Kelsoe*, 308 S.E.2d at 104. The *Kelsoe* court found that the legislature "clearly proscribed an offense against the person," and that the "[t]he gravamen of the offense is the inducement of fear in another." *Kelsoe*, 308 S.E.2d at 104. The determinative factor in *Kelsoe* was the statute's reference to placing a "victim" in fear. The court, therefore, concluded that "when the defendant frightened the three men by pointing his weapon, he committed three separate crimes . . . [for which] the trial court was authorized to impose multiple punishments[.]" *Kelsoe*, 308 S.E.2d at 104.

Similarly, in *Tuggle v. State*, 733 P.2d 610 (Wyo. 1987), the Supreme Court of Wyoming rejected a double jeopardy claim brought by a defendant who received consecutive sentences for two counts of aggravated assault and battery involving two victims. The defendant had pled guilty to drawing his gun on the first victim and, upon being confronted by the second victim, pointed it at the second victim. The statute at issue in *Tuggle* provided in pertinent part, that "'[a] person is guilty of aggravated assault and battery if he . . . [t]hreatens to use a drawn deadly weapon on another. . . .'" *Tuggle*, 733 P.2d at 610 n.1. The court found that the use of the word "another" in referring to the victim of the crime

9

indicated that the legislature's intent was to protect each individual, since "another" as used in the statute is "a singular term and thus means each time 'another' is affected by said crime, it is a separate offense." *Tuggle*, 733 P.2d at 612. *See State v. Myers*, 229 W. Va. 238, 728 S.E.2d 122 (2012) (rejecting double jeopardy argument and affirming three robbery sentences for a single incident that involved three victims).

The courts in *Kelsoe* and *Tuggle* instruct this Court that, for double jeopardy analysis, when the unit of prosecution prohibits conduct specifically against a "victim" or "another," a single incident of the prohibited conduct may be punished as a separate offense for each person present.[13] In the instant proceeding however, the unit of prosecution does not expressly refer to a victim. The unit of prosecution focuses upon the "breach of peace" without regard to any specific number of persons affected. To the extent that the unit of prosecution may be considered ambiguous, the rule of lenity requires that we are to resolve that ambiguity in favor of the defendant. *See State v. Stone*, 229 W. Va. 271, 278, 728 S.E.2d 155, 162 (2012) ("If the unit of prosecution is not clearly indicated, the rule of lenity must be applied." (internal quotations and citation omitted). All this means is "that when the Legislature fails to indicate the allowable unit of prosecution and sentence with clarity, doubt as to legislative intent should be resolved in favor of lenity for the accused." *State v. Sears*,

---

[13]*See State v. McGilton*, 229 W. Va. 554, 729 S.E.2d 876 (2012) (where unit of prosecution was focused upon an individual victim and therefore multiple punishment for a single transaction did not violate double jeopardy principles).

196 W. Va. 71, 81, 468 S.E.2d 324, 334 (1996). *See also People v. Sotelo*, 968 N.E.2d 687, 689 (Ill. App. Ct. 2012) ("Where a statute is ambiguous as to the allowable unit of prosecution, the court must adopt a construction that favors the defendant." (internal quotations and citation omitted). Thus, we must conclude, and so hold, that the focus of the unit of prosecution under the brandishing statute, W. Va. Code § 61-7-11 (1994) (Repl. Vol. 2010), is not dependent upon the number of victims present when a deadly weapon is used to breach the peace. Therefore, a single incident of brandishing may not be punished as multiple offenses merely because there are two or more victims present or affected thereby. In support of his argument reaching this conclusion, Mr. Goins relies upon this Court's decision in *State v. Kendall*, 219 W. Va. 686, 639 S.E.2d 778 (2006).

In *Kendall,* a police officer, without a warrant, entered a home with his pistol drawn. The officer was looking for a DUI suspect. The suspect was not in the home, but three other persons were present.[14] The police officer subsequently was indicted for three counts of wanton endangerment, burglary and other charges. A jury convicted the defendant of burglary and three counts of brandishing, as the lesser included offenses of wanton endangerment. One of the issues the defendant raised on appeal was that double jeopardy principles precluded his conviction and sentence for three counts of brandishing because only one incident of brandishing had occurred. This Court agreed with the defendant as follows:

---

[14]A fourth person was in the home, but he was asleep.

11

> [I]n the present case, the State's evidence indicated only one act of brandishing a weapon. Despite the presence of multiple witnesses, one act of brandishing should produce a conviction for only one count of brandishing. There did not appear to be any evidence of multiple acts of brandishing or specific instances of threats against separate individuals.

*Kendall*, 219 W. Va. at 696, 639 S.E.2d at 788. *See State v. Turner*, 137 W. Va. 122, 70 S.E.2d 249 (1952) (affirming single sentence for brandishing a deadly weapon in front of several victims.) *See also In re Peter F.*, 34 Cal. Rptr. 3d 52, 55, 132 Cal. App. 4th 877, 881, (2005) ("Thus, a single act of brandishing can only support a conviction of a single count . . . no matter how many people witness the act. Indeed, the victim of the crime of brandishing need not even be aware the defendant possesses a weapon.").

The State argues that *Kendall* is distinguishable because the sentences in *Kendall* were based upon the number of victims in the room. The State now contends that the sentences in the instant case were not based upon the number of victims present when the brandishing occurred. Instead, the State argues that "every time [Mr. Goins] fired his pistol in the direction of the Tiller's [sic] vehicle constituted a separate act of brandishing, as each shot was a separate breach of the peace, for which he could be convicted and sentenced." We disagree with the State for two reasons. First, the jury did not convict Mr. Goins of brandishing based upon the number of shots he fired. In our review of the jury instructions, it is clear that the jury was instructed to find Mr. Goins guilty of brandishing based upon the number of persons present. That is, the jury was instructed to determine whether Mr. Goins

12

brandished a weapon in the presence of each of the victims. Second, even if the jury was instructed that it could convict Mr. Goins of brandishing based upon each shot he fired, such an instruction would be erroneous. Nothing in the text of our brandishing statute suggests that it is violated based upon the number of shots fired from a weapon.[15] To accept the State's interpretation of the statute would mean that if a person fired a weapon three times in the presence of only one person, three brandishing offenses occurred. This is an absurd interpretation of the statute. *See Napier v. Board of Educ. of Cnty. of Mingo*, 214 W. Va. 548, 553, 591 S.E.2d 106, 111 (2003) ("It is . . . the duty of a court to disregard a construction . . . of the words in a statute, when such construction would lead to injustice and absurdity."( quoting Syl. pt. 2, in part, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925))).

Based upon the foregoing, we find that the trial court committed error in sentencing Mr. Goins for five counts of brandishing, when only a single incident of breach of the peace was established. *See State v. Stone*, 229 W. Va. 271, 728 S.E.2d 155 (2012) (finding double jeopardy prohibited multiple sentences for the number of people killed in an auto accident where the defendant failed to stop and remain at the scene); *State ex rel. Porter v. Recht*, 211 W. Va. 396, 566 S.E.2d 283 (2002) (holding that unit of prosecution for the offense of false swearing did not include each false statement found in an affidavit).

---

[15]In fact, the brandishing statute does not require a weapon be discharged to sustain a conviction.

### B. Sufficiency of the Evidence

Mr. Goins next contends that the evidence in this case was insufficient to sustain a conviction under the brandishing statute. This Court has observed that "a criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden." *State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 (1995). "Thus, when a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict." *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). "Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Guthrie*, 194 W. Va. at 669-70, 461 S.E.2d at 175-76.

Mr. Goins testified during the trial. He admitted getting out of his van and shooting his pistol. However, Mr. Goins testified that he did not know anyone was present at the time he began shooting. Mr. Goins' version of events was contradicted by the testimony of Mr. Tiller and his wife. Mr. Tiller testified as follows:

> Q. Okay. And at what point did you realize that you were looking at Ronald Goins?
>
> A. When he got out of the van and turned to where I could see–could see that it was him.

Q. Okay. From where he was, could he see you?

A. Yes.

. . . .

Q. Could you please indicate to the jury who shot at you, your wife, and your children that day?

A. Ronald Goins.

. . . .

Q. Okay. How close were you able to hear the bullets coming to you?

A. To me, they sounded like they was in 15–10, 15 foot of me.

. . . .

Q. How did it make you feel when you heard this? Were you calm? Were you afraid?

A. It terrified me. After about the fourth or fifth shot they were so close I put my car in gear and sped out. That's when I went and I called my mom.

Mrs. Tiller provided the jury with the following testimony:

Q. Okay. In looking at that, did you see anything that day?

A. I seen Ronald [Goins] in the drivers [sic] side of the van, looked like he was trying to beat the key switch out of it.

. . . .

Q. Sure.

A. He gets out of the van, and he looks right up there to where we're parked, and he starts walking towards the front of the van. He raises his arm and starts shooting. It sounds like they're hitting the guardrail.

15

. . . .

Q. How did that make you feel? Were you calm, afraid, or--

A. No, I was terrified. I was trying to get him [Mr. Tiller] to leave.


In finding Mr. Goins guilty of violating W. Va. Code § 61-7-11, it is obvious that the jury rejected Mr. Goins' assertion that he did not see anyone when he repeatedly fired his pistol in the direction of the Tillers' vehicle. The jury's decision to believe the Tillers' version of the facts, over that of Mr. Goins, involved credibility determinations. We have emphasized that "[c]redibility determinations are for a jury and not an appellate court." *Guthrie*, 194 W. Va. at 669, 461 S.E.2d at 175. Therefore, we conclude that the record clearly shows that the State presented sufficient evidence for a jury to find Mr. Goins guilty of violating W. Va. Code § 61-7-11 beyond a reasonable doubt.


## IV.

## CONCLUSION

For the reasons set out above, this Court finds that the five sentences imposed upon Mr. Goins for the offense of brandishing under W. Va. Code § 61-7-11 violate double jeopardy principles, and, accordingly, we reverse the judgment of the Circuit Court of Mercer County on that ground. However, we find that there was sufficient evidence to support Mr. Goins' conviction for a single count of W. Va. Code § 61-7-11, and, therefore, we affirm in

16

this regard and remand this case to the trial court for resentencing on that charge. *See State v. Williams*, 172 W. Va. 295, 312, 305 S.E.2d 251, 268 (1983) ("When there is no error in a criminal case other than the judgment imposing sentence, the judgment should be reversed and remanded for entry of a proper sentence by the trial court.").

Affirmed, in part; Reversed, in part; and Remanded.