**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0328** (Jefferson County 20-F-50)

**Kevin Ray Fowler Jr.,**
**Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner Kevin Ray Fowler Jr. appeals the March 23, 2021, order of the Circuit Court of Jefferson County sentencing him to the penitentiary for his convictions for first-degree robbery, burglary, felony conspiracy, and malicious assault.[1] For the reasons discussed herein, we affirm the trial court's order.

## I.  Factual and Procedural Background

On January 23, 2020, Veronica Marcus ("the victim") was the victim of a home invasion and assault. Two days later, petitioner was arrested in connection with the attack.

In March of 2020, petitioner was examined by psychologist Harold Slaughter at the request of petitioner's counsel. Mr. Slaughter determined that petitioner displayed "no indications of current serious (psychotic) issues such as thought disorder, hallucinations, delusions, etc." Mr. Slaughter further determined that petitioner met the criteria for competency, noting that petitioner had no difficulty discussing "the roles of the major participants within the judicial system."

For his role in the home invasion and assault, petitioner was indicted, during the April 2020 term of court, on one count of first-degree robbery (Count 1), one count of burglary (Count 2), one count of felony conspiracy to commit burglary and robbery (Count 3), and eighteen counts of malicious assault (Counts 4 through 21).[2]

---

[1] Petitioner appears by counsel Eric S. Black. Respondent State of West Virginia appears by counsel Patrick Morrisey and Katherine M. Smith.

[2] The eighteen counts of malicious assault each referenced a separate injury to the victim's body. Those injuries included lacerations on her head that were closed with staples or stitches, a

(continued . . .)

1

When petitioner was arraigned, his trial was set to begin on September 1, 2020. On August 7, 2020, the State filed a motion to continue the trial, claiming that forensic testing of certain evidence might not be completed by the trial date. The motion stated that prior to the submission of the evidence for forensic testing on June 15, 2020, the State was "under the mistaken belief that the investigating agency . . . had, or was about to," submit the evidence for testing. The State asserted that the laboratory's results could not be obtained before August 14, 2020, because of processing delays resulting from the COVID-19 pandemic. Petitioner opposed the motion, requesting that his trial be held during the same term of court in which he was indicted. The trial court, finding good cause for a continuance, granted the State's motion and continued the trial into the September 2020 term of court.[3]

Petitioner filed a motion to suppress a credit card found in his wallet. The credit card bore the name of Michael Parkinson, the victim's boyfriend and a resident of the victim's home. The wallet was searched at the West Virginia State Police barracks after petitioner was transported there following his lawful arrest. Petitioner argued that his wallet was illegally seized and searched. Petitioner also filed a motion to dismiss Counts 5 through 21 of the indictment on double jeopardy grounds. The trial court denied both motions.

Petitioner's jury trial commenced on November 4, 2020. The State's evidence established that on the morning of January 23, 2020, Mr. Parkinson was arrested and incarcerated in Maryland. That afternoon, the victim texted Adam Luke, a friend of Mr. Parkinson, advising him that Mr. Parkinson had been incarcerated. That evening, Mr. Luke met with multiple individuals, including petitioner, telling them, "Mike Parkinson is in jail so let's go hit his house." Mr. Luke then drove to the victim's home with petitioner and a third individual. Petitioner kicked in the back door, entered the home, and attacked the victim. The victim could not identify her assailant; however, she claimed that the man who attacked her demanded cash, severely beat her, and held a knife to her throat, telling her, "[D]on't make me f—ing kill you. I need the cash. I know you know where it is." When petitioner returned to Mr. Luke's car, he said, "I basically killed this b— [] for three foils and credit cards."[4] The State's evidence showed that Mr. Parkinson's credit card was later found in petitioner's wallet.

The jury found petitioner guilty on Counts 1 through 12, 14 through 19, and 21. The jury acquitted petitioner on Counts 13 and 20. The trial court entered an order of conviction on November 10, 2020.

---

laceration on her neck, a laceration on her right shoulder, and contusions and cuts on various body parts.

[3] The terms of court in Jefferson County commence "on the third Tuesday in January, April, and September." W. Va. T.C.R. 2.23.

[4] Mr. Luke explained that "foils" were "like foil[s] of dope, heroin."

In December of 2020, the State filed a recidivist information, seeking the imposition of recidivist penalties based on petitioner's multiple prior felony convictions.[5] Petitioner filed a motion to permit a second full psychological evaluation and competency evaluation, stating:

> Since the first trial held on November 4, 2020, defendant has appeared to counsel as depressed, lethargic and not responsive as compared to prior to then. Letters received by counsel give the appearance of some confusion and sometimes repeat issues recently discussed. Defendant may be depressed or sad considering the outcome of the prior jury verdict and the possible sentence he is facing.

Petitioner asserted the second evaluation was necessary to determine whether he could assist in his defense in the scheduled recidivist trial, and he asserted the evaluation may assist the trial court in any future sentencing proceeding.

The trial court denied petitioner's motion for a competency evaluation by order entered on February 8, 2021, determining that no reasonable cause existed for a second competency evaluation. The trial court said:

> While [Mr. Slaughter's evaluation] mentions [petitioner]'s self-reports of mental health concerns and his beliefs as to what would be best for him, there is no indication whatsoever that the [petitioner] is incompetent to stand trial.

> Moreover, the [c]ourt has had several occasions to observe and listen to the [petitioner], including a pre-trial hearing before the trial in 20-F-50 and also today at the pre-trial conference. Today, the [petitioner] carefully articulated a cogent reason for his stated concern regarding the testimony of a correctional officer. This leads the [c]ourt to believe that the [petitioner] is fully capable of participating in his defense.

Petitioner ultimately admitted to the allegations in the recidivist information, and no trial on the recidivist information was held.

On March 23, 2021, the trial court entered a sentencing order, directing that petitioner serve the following sentences in the penitentiary: sixty years for robbery (Count 1), one to fifteen years for burglary (Count 2), one to five years for felony conspiracy (Count 3), life imprisonment with mercy for malicious assault under the recidivist statute (Count 4), and two to ten years on each of the remaining malicious assault convictions (Counts 5 through 12, 14 through 19, and 21). The trial court ordered that the sentences for Counts 1 through 4 run consecutively to each other and that the remaining counts run consecutively to each other but concurrent to Counts 1 through 4.[6]

---

[5] Petitioner had previously been convicted of possessing a weapon in jail, breaking and entering, grand larceny, felony failure to register as a sex offender, and two counts of kidnapping.

[6] When petitioner was sentenced in this case, he was already serving sentences in the penitentiary for convictions in Berkeley County, West Virginia. The trial court directed that the sentences in this case run consecutively to the Berkeley County sentences.

3

## II. Discussion

Through numerous assignments of error, petitioner asserts that his convictions should be set aside and that his case should be remanded to the trial court. For the reasons discussed below, we find no merit to his claims.

### A. Speedy Trial

Petitioner argues that his right to a speedy trial pursuant to West Virginia Code § 62-3-1, the United States Constitution, and the West Virginia Constitution was violated when the trial court continued his case beyond the term of his indictment. He asserts that the State's failure to submit its evidence for forensic testing until nearly six months after the alleged offense did not constitute good cause for the continuance. Our review of the trial court's finding of good cause to grant the continuance is for abuse of discretion. *See* Syl. Pt. 2, in part, *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 294 S.E.2d 51 (1981) ("The determination of what is good cause . . . for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may . . . grant a continuance of a trial beyond the term of indictment . . . .").

West Virginia Code § 62-3-1 provides, in relevant part, "When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term." Additionally, both the United States Constitution and the West Virginia Constitution provide criminal defendants with the right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]"); W. Va. Const. art. III, § 14 ("Trials of crimes, and of misdemeanors, . . . shall be . . . without unreasonable delay[.]").

We find that the trial court did not abuse its discretion in finding that the State had set forth good cause to continue petitioner's trial into the September 2020 term of court. The State's evidence was submitted for forensic testing two and a half months before the trial was set to begin, and the COVID-19 pandemic delayed the processing of that evidence. A continuance beyond the April 2020 term of court was warranted under those circumstances. Further, we held in *Shorter* that

> [w]hereas *W.Va.Code*, 62–3–1, provides a defendant with a statutory right to a trial in the term of his indictment, it is *W.Va.Code*, 62–3–21,[7] rather than *W.Va.Code*, 62–3–1, which is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of *U.S.Const.*, amend. VI

---

[7] West Virginia Code § 62-3-21 provides "that, subject to enumerated exceptions, a criminal defendant shall be discharged from prosecution if not tried within three terms of court after presentment, indictment or appeal from an inferior tribunal." *State ex rel. Shorter v. Hey*, 170 W. Va. 249, 253, 294 S.E.2d 61, 55 (1981).

4

and *W.Va.Const.*, art. III, § 14. *State ex rel. Smith v. DeBerry*, 146 W.Va. 534, 538, 120 S.E.2d 504, 506 (1961).

170 W. Va. at 251, 294 S.E.2d at 53, Syl. Pt. 1 (footnote added). In that petitioner has not alleged that his trial was continued in violation of West Virginia Code § 62-3-21, we determine that the continuance did not violate petitioner's right to a speedy trial under the federal or State constitutions.

### B.  Double Jeopardy

Petitioner argues that his convictions and sentences for malicious assault subjected him to double jeopardy because the State failed to prove that the malicious assault offenses represented separate and distinct violations of the malicious assault statute. We review his double jeopardy claim de novo. *See* Syl. Pt. 1, *State v. McGilton*, 229 W. Va. 554, 729 S.E.2d 876 (2012) ("'[A] double jeopardy claim [is] reviewed *de novo*.' Syllabus Point 1, in part, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996)."). Additionally, in examining his claim as to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found, beyond a reasonable doubt, that each of the malicious assault charges of which petitioner was convicted involved a separate and distinct violation of the malicious assault statute. *See* Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (stating that, when reviewing a claim involving the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.").

"'The Double Jeopardy Clauses of both the federal and State constitutions protect an accused in a criminal proceeding from "multiple punishments for the same offense."' Syllabus Point 1, in part, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977)." Syl. Pt. 9, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991); *accord McGilton*, 229 W. Va. at 555-56, 729 S.E.2d at 877-78, Syl. Pts. 2 & 3. In West Virginia, a person is guilty of malicious assault if that person "maliciously shoots, stabs, cuts or wounds any person, or by any means cause[s] him or her bodily injury with intent to maim, disfigure, disable or kill." W. Va. Code § 61-2-9(a). In *McGilton*, we held that

> [a] defendant may be convicted of multiple offenses of malicious assault under West Virginia Code § 61–2–9(a) (2004)[8] against the same victim even when the offenses were a part of the same course of conduct. Such convictions do not violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution as long as the facts demonstrate separate and distinct violations of the statute.

---

[8] Although West Virginia Code § 61-2-9 was amended in 2014 and 2017, the statutory language applicable to this case and *McGilton* has not substantively changed since *McGilton* was decided.

5

229 W. Va. at 556, 729 S.E.2d at 878, Syl. Pt. 9 (footnote added). We explained that where a defendant is charged with multiple counts of malicious assault arising from the same course of conduct, to avoid running afoul of double jeopardy principles, the State must "prove beyond a reasonable doubt that the perpetrator inflicted the wound or bodily injury with the specific intention to maim, disfigure, disable or kill the victim *for each and every count* of the indictment against that individual." *Id.* at 567, 729 S.E.2d at 889.

We conclude that sufficient evidence was presented for the jury to have found, beyond a reasonable doubt, that each of the malicious assault charges of which petitioner was convicted involved a separate and distinct violation of the malicious assault statute. Under the specific facts of this case, a reasonable jury could have found that petitioner caused the victim's injuries and that, prior to inflicting each injury, petitioner formed the intent to permanently maim, disfigure, disable, or kill her. Just as in *McGilton*, where the defendant in that case was charged with multiple counts of malicious assault after repeatedly stabbing his wife and threatening to kill her, petitioner wielded a knife when he attacked the victim and threatened to kill the victim. *See* 229 W. Va. at 567, 729 S.E.2d at 889. Further, just as the multiple malicious assault charges against the defendant in *McGilton* did not violate double jeopardy principles, the malicious assault charges against petitioner do not violate double jeopardy principles. Thus, upon our de novo review of this issue, we find no error.

## C.  Search and Seizure

Petitioner argues that the search of his wallet at the police barracks was unlawful and that the trial court erred by failing to suppress the fruit of the illegal search: the discovery of Mr. Parkinson's credit card in petitioner's wallet. Petitioner challenges only the legal determination of the trial court—that the evidence was admissible—and not the findings of fact underpinning the court's ruling. We apply a de novo standard of review to this issue. *See* Syl. Pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) ("On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*.").

"The Fourth Amendment to the United States Constitution, and the correlative provision of the West Virginia State Constitution, Article III, Section 6, protect[] people against certain kinds of governmental intrusion." *State v. Snyder*, 245 W. Va. 42, 47, 857 S.E.2d 180, 185 (2021) (footnotes omitted). "[T]he touchstone of the Fourth Amendment's promise is 'reasonableness,' which generally, though not always, translates into a warrant requirement." *State v. Lacy*, 196 W. Va. 104, 112, 468 S.E.2d 719, 727 (1996). A search and seizure conducted without a warrant "may be constitutional if the search and seizure can be justified under one of the well-delineated exceptions [to the warrant requirement] or where both exigent circumstances and probable cause exist." *Id.* at 111-12, 468 S.E.2d at 726-27.

"One of the most frequently utilized exceptions to the warrant requirement is the search incident to an arrest." *State v. Julius*, 185 W. Va. 422, 426, 408 S.E.2d 1, 5 (1991) (quoting J. Cook, *Constitutional Rights of the Accused* § 322 at 494 (2d ed. 1985)). We have held that "'[a] warrantless search of the person and the immediate geographic area under his physical control is authorized as . . . incident to a valid arrest.' Syllabus Point 6, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980)[, *overruled on other grounds by Julius*, 185 W. Va. 422, 408 S.E.2d 1]." *Id.* at

6

424, 408 S.E.2d at 3, Syl. Pt. 1. This exception to the warrant requirement "has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime." *United States v. Edwards*, 415 U.S. 800, 802, 94 S. Ct. 1234, 1237 (1974). We have further held that "[s]earches and seizures that could be made at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *Julius*, 185 W. Va. at 424, 408 S.E.2d at 3, Syl. Pt. 2; *see also Edwards*, 415 U.S. at 803, 94 S. Ct. at 1237 ("[B]oth the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place[.]").

We find that the trial court did not err by refusing to suppress evidence of the discovery of the credit card. Under our decision in *Julius* and the United States Supreme Court's decision in *Edwards*, the police were permitted to search petitioner incident to his lawful arrest. The search lawfully extended to petitioner's wallet because the wallet was within the scope of the immediate geographic area under petitioner's physical control. Further, because the police could have legally searched petitioner at the time of the arrest, the search and seizure that occurred at the police barracks was legal. Therefore, upon our de novo review of the issue, we find no error.

### D. Competency/Psychological Evaluation

Petitioner claims that he was entitled to a second competency evaluation in light of his mental health ailments. We review the trial court's decision denying his request for a second competency evaluation for abuse of discretion. *See State v. Sanders*, 209 W. Va. 367, 379, 549 S.E.2d 40, 52 (2001). ("Because a trial court is able to observe the demeanor of the defendant and consequently has a better vantage point than this Court to make determinations regarding mental competency, we will disturb a lower court's ruling denying a psychiatric examination and related proceedings only where there has been an abuse of discretion.").

Under West Virginia law,

> [n]o person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of this defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him.

Syl. Pt. 1, *State v. Milam*, 159 W. Va. 691, 226 S.E.2d 433 (1976). "'It is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent.' *State v. Cheshire*, 170 W.Va. 217, 219, 292 S.E.2d 628, 630 (1982)." Syl. Pt. 5, *State v. Hatfield*, 186 W. Va. 507, 413 S.E.2d 162 (1991).

West Virginia Code § 27-6A-2(a) provides, in pertinent part, that

> [w]henever a court of record has reasonable cause to believe that a defendant in a criminal matter in which an indictment has been returned, or a warrant or summons issued, may be incompetent to stand trial, it shall . . . order a forensic evaluation of the defendant's competency to stand trial to be conducted by a qualified forensic evaluator.

7

However,

> [w]here a criminal defendant has already been afforded a competency hearing . . . and been found mentally competent to stand trial, a trial court need not suspend proceedings for purposes of permitting further psychiatric evaluation or conducting an additional hearing unless it is presented with new evidence casting serious doubt on the validity of the earlier competency finding, or with an intervening change of circumstance that renders the prior determination an unreliable gauge of present mental competency.

*Sanders*, 209 W. Va. at 370, 549 S.E.2d at 43, Syl. Pt. 4. We have held that "[e]vidence of irrational behavior, a history of mental illness or behavioral abnormalities, previous confinement for mental disturbance, demeanor before the trial judge, psychiatric and lay testimony [all] bear[] on the issue of competency." Syl. Pt. 5, in part, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980).

We disagree with petitioner's claim that he was entitled to a second competency evaluation. The "new evidence" presented by petitioner to justify a second hearing—that his counsel described him as appearing depressed, lethargic, less responsive, confused, and sad—did not cast serious doubt on the validity of the earlier competency finding by Mr. Slaughter, particularly in light of the trial court's findings in its February 8, 2021, order. Further, the "new evidence" did not represent an intervening change of circumstances rendering the prior competency determination an unreliable gauge of petitioner's mental competency ahead of the scheduled recidivist trial. Accordingly, we find no abuse of discretion in this instance.[9]

### III. Conclusion

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 17, 2022

**CONCURRED IN BY:**

---

[9] In addition to the claims addressed herein, petitioner asserts that his indictment on seventeen counts of malicious assault violated double jeopardy principles, that his sentences violated the proportionality provisions of the federal and State Constitutions, and that his sentences constituted cruel and unusual punishment. Petitioner mentions these claims in passing and does not support them with argument. Consequently, the issues have not been preserved for appeal, and we will not consider them. *See State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (recognizing that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3rd Cir. 1993))).

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn